IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

IN RE:

SOUTTHASAVATDY SIHARATH  :  CASE NO. 02-41501-RJK
SSN: 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  :  CHAPTER 7

    Debtor.

---

SOUTTHASAVATDY SIHARATH
    Plaintiff,

vs.  :  ADV. NO. 02-4166 RJK

CITIFINANCIAL SERVICES, INC., and
PETERSON FRAM & BERGMAN, P.A.,

    Defendants.

## PLAINTIFF'S TRIAL MEMORANDUM

### FACTS

The following facts are admitted and undisputed:

01. On April 24, 2002, Plaintiff was indebted to defendant CitiFinancial Services, Inc. on an unsecured note, original principle amount of $3477.61.

02. On April 24, 2002, Plaintiff filed a chapter 7 case in this district, with case number 02-41501-RJK.

03. Defendant CitiFinancial was listed on the mailing matrix with two addresses and as an unsecured creditor on the bankruptcy schedules filed with the court.

04. On April 27, 2002, the standard notice was sent to creditors informing of the filing, first meeting of creditors, and warning creditors not to take certain actions. (Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2.)

05. On April 26, 2002, Defendant CitiFinancial allegedly commenced an action in Hennepin District Court against the plaintiff seeking collection of a pre-petition debt. (Plaintiff's Exhibit 3)

06. Defendant received notice of the bankruptcy in the ordinary course of business. (Plaintiff's Exhibit 4)

07. On June 11, dismissed Defendant Peterson (defendant Peterson), counsel for Defendant CitiFinancial, served an Affidavit of No Answer, Identification, Non-Military

1

Status, Amount Due and Costs and Disbursements", Affidavit of Lost Instrument and in Support of Attorney Fees, together with a service letter on the Plaintiff. (Plaintiff's Exhibit 5)

08. On June 24, 2002 judgment was entered against the Plaintiff in Hennepin County District Court, in favor of defendant CitiFinancial and with the assistance of counsel, defendant Peterson. (Plaintiff's Exhibit 6)

09. On July 1, 2002, defendant Peterson served an Execution Notice and Intent to Levy on Earnings After Ten Days on Plaintiff. (Plaintiff's Exhibit 7)

## CLAIMS

This Amended Complaint in this matter sought Declaratory and Injunctive Relief, requesting the court for an Order declaring the dischargeability of the debt owed by Plaintiff to defendant CitiFinancial was discharged and seeking an injunction ordering defendants to refrain from violating the discharge order, seeking enforcement of relevant automatic stay provisions and damages under 362(h), and directing creditor compliance with the Fair Credit Reporting Act. The court, following a hearing on summary judgment motions by the defendants has ordered that Plaintiff shall recover nothing from defendant Peterson on her complaint. The court ruled that Plaintiff shall not recover punitive damages or enhanced attorney fees from Defendant CitiFinancial, but denied summary judgment on all other claims.

## MATTERS IN DISPUTE

The only matter substantially in dispute is that related to damages under 11 USC section 362(h). Plaintiff, cites the following authorities in support of its claims under section 362(h):

In re Knaus, 885 F. 2d 773 (8th Cir. 1989), providing for a strict liability standard for damages in cases involving actual debtors in bankruptcy; In re Atkins, 176 B.R. 998 (D. Minn. 1994); In re Vierkenant, 240 B.R. 317 (B.A.P. 8th Cir. 1999). In Vierkenant, the Eight Circuit ruled for the first time that a violation of the automatic stay was void rather than voidable, thereby making stay violations void without the need for direct challenge, removing the need to affirmatively challenge creditor violations of the stay, and otherwise broadening the protections of the automatic stay. This finding finds consistency in the Knaus holding, applying a strict liability standard to violations of the automatic stay, and otherwise making the automatic stay sacrosanct. Accordingly, Vierkenant places in doubt holdings related to proof of damages issues associated with automatic stay violations. A case almost wholly on

2

point here is <u>Eskanos v. Leetien</u>, No. 01-56203, D.C. No. CV-00-02427 JNK(NLS) (9th Cir., filed Nov. 7, 2002.) Damages were awarded where counsel for debtor had to maintain vigilance during continuing state court action filed in violation of the automatic stay.

The position with respect to the claims of violation of the automatic stay were presented in the Opposition to Motions for Summary Judgment previously filed herein and will not be repeated here. However, <u>Eskanos</u>, being a new case and factually on point, is highlighted here and the undersigned suggest that this case provides appropriate guidance herein. Plaintiff contends that section 362(h) describes damages to <u>include</u> attorney fees, and the fees <u>shall</u> be paid once a willful violation of the stay has been found.

With the finding of a willful violation, the only issue left to determine on the 362(h) claim is damages. This will be proven through the testimony of witnesses at trial including the plaintiff, her sister Kim Siaharath, counsel for the plaintiff, Robert Smith, John Heck and Steven Hartman. It is presently intended that this testimony will include the violation of the stay and consequences to the Plaintiff, her emotional distress and the actions necessary to repair the injury to her and her fresh start in bankruptcy.

With respect to emotional distress, the reported cases each turn on their individual facts. Suffice it to say, that lawsuits are aimed at extracting payment through imposition of legal pressure and this pressure is per se emotionally distressful, especially with the imposition of an illegal judgment. Regardles of their legality, judgments always are troublesome and cause more than fleeting concern.

date: November 13, 2002


Respectfully Submitted:


Vance O. Bushay
MN
Attorney for Plaintiff
701 Fourth Avenue South 500
Minneapolis MN 55415-1631
612.371.8241

Mitchell R. Hadler
MN 39172
Attorney for plaintiff
701 Fourth Avenue South 500
Minneapolis MN 55415-1631
612.414.7361/651.222.4260

3

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESKANOS & ADLER, P.C.,<br>    *Plaintiff-Appellant,*<br>    v.<br>SOMKIAT G. LEETIEN,<br>    *Defendant-Appellee.* | No. 01-56203<br>D.C. No.<br>CV-00-02427-<br>JNK(NLS)<br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Judith N. Keep, District Judge, Presiding

Argued and Submitted
October 10, 2002—Pasadena, California

Filed November 7, 2002

Before: Procter Hug, Jr., Melvin Brunetti, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Hug

1

## COUNSEL

Barry Adler, Concord, California, for the appellant.

Mark L. Miller, San Diego, California, for the appellee.

## OPINION

HUG, Circuit Judge:

Somkiat Leetien ("Leetien") filed for bankruptcy. Shortly thereafter, her creditor, First Select, Inc. ("First Select"), through its legal counsel and collection agent, Eskanos & Adler ("Eskanos"), filed in state court a collection action against Leetien. The bankruptcy judge jointly sanctioned Eskanos and First Select $1,000 for willfully violating the automatic stay protection in federal bankruptcy law by failing to timely dismiss or stay the state collection action. The district court affirmed.

Eskanos appeals, claiming that federal bankruptcy law imposes no affirmative duty to discontinue post-petition state collection actions. Eskanos also contends that no willful violation occurred, and that Leetien did not sustain actual damages. First Select does not appeal the district court's order. We disagree with Eskanos and AFFIRM.

I

On August 18, 2000, Leetien voluntarily filed a Chapter 7 bankruptcy petition. This filing engages the automatic stay protection pursuant to 11 U.S.C. § 362(a) of the Bankruptcy Code. First Select, listed as an unsecured creditor from Leetien's schedules, was notified via first class mail on August 23, 2000. On August 28, 2000, Eskanos filed a collection action on behalf of First Select in California state court against Leetien. Leetien received a summons for this action on September 5, 2000.

On September 6, 2000, counsel for Leetien, Michael Doan ("Doan"), made several attempts to speak by telephone with

an attorney at Eskanos, but no lawyer at the firm would speak with him. Ultimately Doan managed to leave a message of Leetien's pending bankruptcy petition with a legal assistant. He also notified Eskanos on this date through two faxes. Doan requested that the state action be either dismissed or placed on the state's stay calendar by September 20, 2000. On September 26, failing to receive communication from Eskanos, Doan contacted the state court, which confirmed the collection action remained active.

Eskanos did not dismiss its state collection action until September 29, 2000, and made no attempt to explain its delay to Leetien. Moreover, Eskanos did not contact Leetien until October 3, 2000, the date Leetien filed its automatic stay violation motion against First Select and Eskanos in federal bankruptcy court.

Bankruptcy Judge Louise Adler ruled that Eskanos willfully violated the automatic stay. She concluded that sanctions were appropriate under 11 U.S.C. § 362(h) because Eskanos knew of the bankruptcy filing on September 6, 2000, and unjustifiably delayed in dismissing the state action until September 29, 2000. She rejected Eskanos's proffered excuses that delay resulted from problems with its process server, and misplacing the case number to the state collection action. Judge Adler found that Leetien sustained actual damages defending against a potential default judgment from the active state collection action.

Judge Adler additionally ruled that First Select received notice of Leetien's bankruptcy on August 23, 2000, in time to notify Eskanos before it served Leetien with the state action summons on September 5, 2000. She expressly rejected First Select's defense that due to its large size and the many thousand collection accounts it monitors, it did not have knowledge of the August 23 notice until it registered the notice into its computer system on September 12, 2000.

On June 27, 2001, the district court affirmed the award of $1,000 sanctions imposed jointly and severally upon Eskanos and First Select by the bankruptcy court.

Jurisdiction of this court is proper pursuant to 28 U.S.C. § 158(d).

## II

This court reviews de novo the district court's decision on an appeal from the bankruptcy court. *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir. 2002). We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002).

Whether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law reviewed de novo. *California Employment Dev. Dep't v. Taxel (In re Del Mission)*, 98 F.3d 1147, 1150 (9th Cir. 1996). Here, we must decide for the first time whether a party has an affirmative duty under § 362(a) to discontinue post-petition collection actions in non-bankruptcy fora against a debtor.

Whether a party has willfully violated the automatic stay is a question of fact reviewed for clear error. Fed. R. Bankr. P. 8013; *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 167 (B.A.P. 9th Cir. 1995). The amount of sanctions imposed for a willful violation of the stay is reviewed for an abuse of discretion. *Franchise Tax Board v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994).

## III

A. Section 362(a) Imposes an Affirmative Duty to Discontinue Collection Actions

While a Bankruptcy Appellate Panel in this circuit has held that creditors have an affirmative duty to discontinue post-

petition collection actions, *In re Roberts*, 175 B.R. at 343, our court does not have a published opinion dealing with the issue.

We begin with the statute. The first and most important step in construing a statute is the statutory language itself. *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-44 (1984). We look to the text of the statute to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Our inquiry ceases if from the plain meaning of the statute congressional intent is unambiguous, and the statutory scheme is coherent and consistent. *Id.*

[1] Section 362(a)(1) automatically stays:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

[2] This statute is unambiguous. The plain language of § 362(a)(1) prohibits the continuation of judicial actions. Section 362(h) permits a person injured by any willful violation to recover actual and punitive damages. The continuation against judicial actions includes the maintenance of collection actions filed in state court. It contradicts the plain meaning of the statute to suggest that the § 362(a)(1) stay against the continuation of judicial actions does not prohibit the maintenance of an active collection action or the unjustified delay in the dismissal of such. A party violating the automatic stay,

through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding or risk possible sanctions for willful violations pursuant to § 362(h).

It would be inconsistent with the statutory scheme to countenance post-petition collection actions filed in state court. In providing the automatic stay, Congress intended all claims against a debtor be brought in a single forum, the bankruptcy court. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law. *Id.*; *see also Chugach Timber Corp. v. Northern Stevedoring & Handling Corp.*, 23 F.3d 241, 243 (9th Cir. 1994). Collection actions maintained in state court threaten the proper execution of bankruptcy proceedings by exposing the debtor's estate to multiple collection actions, undermining the debtor's ability to reorganize her financial affairs, and jeopardizing the creditors as a class with the possibility that one creditor will obtain payment to the detriment of all others. *Hillis Motors*, 997 F.2d at 585. For these reasons we have held that the automatic stay requires an immediate freeze of the status quo by precluding and nullifying post-petition actions. *Id.*

Eskanos contends that § 362(a)(1)'s prohibition against "continuation" should be interpreted narrowly to require conduct beyond maintaining an active claim. It suggests additional efforts in prosecuting the claim should be required. Eskanos cites a Western District of Pennsylvania bankruptcy court decision supporting the proposition that: "continuation in the context of § 362(a) means to carry forward or persist." *Taylor v. Slick (In re Taylor)*, 207 B.R. 995, 999-1000 (Bankr. W.D. Pa. 1997) (*citing Webster's II New Riverside University Dictionary* 305 (1984)). Eskanos asserts that it did not carry forward or persist in its collection action, but rather merely calendared the action for future determination.

[3] This proposition does little to advance Eskanos's argument. Maintenance of an active collection action in state court does nothing if not carry forward or persist against a debtor. A debtor enjoys little satisfaction from a creditor's honest words that it files a collection action in state court but refrains from persisting in the collection action until bankruptcy proceedings sort itself out. Active state filings exist as more than placeholders — the risk of default judgment looms over the debtor throughout. Counsel must be engaged to defend against a default judgment. Additionally, state collection actions are not to be used as leverage in negotiating collection over the debtor's estate already in bankruptcy.

Alternatively, Eskanos cites two Ninth Circuit cases holding the postponement of foreclosure sales by creditors does not violate an automatic stay. *First Nat'l Bank v. Roach (In re Roach)*, 660 F.2d 1316, 1318 (9th Cir. 1981); *Mason-McDuffie Mortg. Corp. v. Peters (In re Peters)*, 101 F.3d 618, 620 (9th Cir. 1996) (per curiam).

Both *Roach* and *Peters* are inapposite. In each the legal holding addressed postponements of actions to collect debts where the creditor notified the debtor of the postponement and maintained the bankruptcy proceeding's status quo. *Roach*, 660 F.2d at 1317; *Peters*, 101 F.3d at 619. The postponement acted as an immediate freeze of non-bankruptcy proceedings. Maintenance of an active collection action against a debtor, on the other hand, neither postpones collection nor maintains the status quo.

[4] Consequently, we reject Eskanos's interpretation that "continuation" requires additional efforts beyond sustaining an active claim. The maintenance of an active collection action alone adequately satisfies the statutory prohibition against "continuation" of judicial actions. Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes

an affirmative duty to discontinue post-petition collection actions.

B.   Eskanos Willfully Violated the Automatic Stay

[5] Section 362(h) permits sanctions for willful violations of § 362(a). A willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional. *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992).

[6] Ample evidence in the record supports the bankruptcy court's finding that Eskanos willfully violated the automatic stay. The bankruptcy court found that: Eskanos was promptly notified of Leetien's filing on September 6, 2000; lawyers at Eskanos refused to take Leetien's counsel's telephone calls; Leetien's counsel left a message with a legal assistant and faxed to Eskanos a request to stay its state action by September 20, 2000; Eskanos did not dismiss its state collection action until September 29, 2000; lawyers at Eskanos made no attempt to explain its delay to Leetien's counsel prior to then; and Eskanos demonstrated no indication that it was attempting to move expeditiously to cure the automatic stay violation. The bankruptcy court also ruled that Eskanos's problem with its process server and missing case number lacked merit, noting that Eskanos was able to serve Leetien on September 5 with a summons and complaint containing a case number.

Eskanos concedes that it received notice on September 6 and did not dismiss the state collection action until September 29. It offers no evidence to the contrary that it refused to answer Leetien's counsel's calls or failed to receive the faxed requests. Nor does it offer any evidence that once it received notice of the bankruptcy filing, that it moved expeditiously to cure the automatic stay violation or attempt to contact Leetien informing her that it halted and discontinued its collection activity.

[7] Eskanos continues to assert that sanctions are inappropriate because any delay in dismissal was due to problems with its process server. We disagree. Eskanos's internal disorder does not excuse it from complying with the automatic stay. Eskanos had knowledge of the bankruptcy filing. We find no clear error in the bankruptcy judge's finding that Eskanos willfully violated the automatic stay.

C. Leetien Sustained Actual Damages

Section 362(h) allows for actual and punitive damages, including costs and attorneys' fees, as sanctions for willful violations. Leetien sustained actual damages in defending against a continuing stay violation and preventing a default judgment. We find no abuse of discretion from the bankruptcy court's joint award of $1,000 against Eskanos and First Select for its willful violation of § 362(a).

## IV

We conclude that § 362(a) imposes an affirmative duty to discontinue post-petition collection actions. Sanctions are appropriate pursuant to § 362(h) because Eskanos willfully violated the automatic stay by maintaining the active collection action and unjustifiably delaying its dismissal after receiving notice of the bankruptcy petition. Leetien sustained actual damages defending against the state action.

AFFIRMED.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

IN RE:

SOUTTHASAVATDY SIHARATH : CASE NO. 02-41501-RJK
SSN: 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 : CHAPTER 7

Debtor.

---

SOUTTHASAVATDY SIHARATH
    Plaintiff,

vs. : ADV. NO. 02-4166 RJK

CITIFINANCIAL SERVICES, INC., and
PETERSON FRAM & BERGMAN, P.A.,

    Defendants.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

Based upon the entire proceedings and all filed documents herein, the Court makes the following

### FINDINGS OF FACT

01.    Plaintiff filed a chapter 7 case on April 24, 2002. The notice was mailed to the local office of Defendant CitiFinancial Services, Inc. Defendant CitiFinancial was an unsecured creditor of the Plaintiff in the chapter 7 case. Defendant CitiFinancial Services, Inc. received notice of the filing of the chapter 7 case within three days of the mailing of the chapter 7 clerk's notice. The record shows that the notice was mailed on April 27, 2002. Accordingly, the court finds that defendant CitiFinancial received notice of the Plaintiff's chapter 7 case as of May 1, 2002.

02.    Prior to the filing of the chapter 7 case, Defendant CitiFinancial hired defendant Peterson to collect the unsecured debt owed to it by the Plaintiff. Defendant Peterson has admitted that it was the agent of Defendant CitiFinancial. Defendants CitiFinancial and Peterson each admit that they commenced an collection claim in Hennepin District Court post-petition, that each furthered collection activity in spite of the filing of the chapter 7 case. That such activity included service of process on the Plaintiff, the application for a default judgment against the Plaintiff,

1

the obtaining of a default judgment against the plaintiff, the obtaining of a garnishment levy to levy against the wages of the Plaintiff, and the Notice of Intent to Levy against the Plaintiff's Wages. The documents evidencing these facts are attached to the Plaintiff's Amended Complaint all of which were admitted into evidence. Further, the default judgment against the Plaintiff was not vacated until October 28, 2002.

03. The court finds that defendant Peterson received notice of the filing of the chapter 7 case no later than July 16, 2002, when notified of the same by Vance O. Bushay. On that date, Ms. Mcginnis, an employee of defendant Peterson, admitted to Mr. Bushay on July 16, 2002, that she already knew about the filing of the chapter 7 case. Ms. McGinnis testifies in her affidavit on the record that she sent a Notice of Intent to levy on the wages of the Plaintiff on July 1, 2002. She further testifies in paragraph 9 of her affidavit that "Shortly thereafter, CitiFinancial notified me that plaintiff had previously filed for bankruptcy. I immediately sent a signed Stipulation and Order for Vacation of Judgment to Mr. Bushay's attention on July 18, 2002." From May 1, 2002 until July 18, 2002 is a period of 78 days.

04. On August 6, 2002, Plaintiff served an Adversary Complaint on defendant CitiFinancial. Thereafter, an amended complaint was served on defendant Peterson on September 16, 2002. The court has granted summary judgment against the Plaintiff and in favor of defendant Peterson. The court has not granted summary judgment as requested in favor of defendant CitiFinancial and the court has found that defendant CitiFinancial willfully violated the automatic stay under 11 USC section 362.

05. The court finds, that as a result of the willful violation of the automatic stay of defendant CitiFinancial, the Plaintiff suffered actual injury caused by the post-petition lawsuit and post petition judgment. A judgment is per se injurious, as the purpose of a judgment is to financially damage a judgment debtor and coerce, through judicial process, the payment of money and to otherwise pressure the judgment debtor financially, through judicial process and through recording of the judgment in a public record. The judgment is a lien on all of the judgment debtor's real property. The court finds that the judgment substantially damaged the plaintiff's fresh start contemplated under the bankruptcy code.

06. The court finds that defendant CitiFinancial had a duty to return to the status quo on its claim, to vacate the judgment and to dismiss the lawsuit against the Plaintiff with prejudice. The judgment was not vacated until October 28, 2002. The lawsuit has not been dismissed with prejudice. This constitutes a continuing injury flowing from the violation of the automatic stay. This conduct, on the part of defendant CitiFinancial, borders on egregious. The damage and injury to the Plaintiff continues to flow from the violation of the automatic stay as long as the lawsuit is pending and not dismissed with prejudice. Defendant CitiFinancial has injured and damaged the Plaintiff's fresh start.

07. The court finds that this adversary proceeding was necessary to force defendant CitiFinancial to take the necessary steps to vacate the judgment. The court gives little weight to the argument that counsel for defendant CitiFinancial stipulated to vacate the judgment and asked bankruptcy counsel Bushay to forward the stipulation to state court for filing.

First, the burden is on the violator of the automatic stay to remedy offending acts and return to the status quo as of the date of filing the chapter 7 case.

Second, there is no proof whatsoever that this stipulation would have been honored by the state court.

Third, the motion to vacate the judgment submitted by counsel for defendant CitiFinancial was not honored by the state court. It was only after counsel for defendant CitiFinancial took the proper documents to the court in person and presented them herself to the signing judge that the judgment was vacated. This was done by Counsel Mc Ginnis of defendant Peterson immediately after her firm was served with plaintiff's opposition to the motion for summary judgment. The opposition memorandum of the Plaintiff questioned the efforts of counsel for defendant CitiFinancial in attempting to vacate the offending judgment against the Plaintiff. The court finds that litigation in this forum was necessary to obtain vacation of the offending default judgment.

Fourth, the cause of the violation of the automatic stay falls exclusively on defendant CitiFinancial. Defendant CitiFinancial cannot pass off responsibility to the Plaintiff under the guise of failure to mitigate in this case. Notice was mailed to defendant CitiFinancial on April 27, 2002. From that date, until July 18, 2002, defendant CitiFinancial did nothing to end collection activities, dismiss the pending state court collection action, or vacate the offending judgment it obtained. In other

words, the violation of the automatic stay was ongoing for a period of 82 days before defendant CitiFinancial alleges the duty to mitigate arose. From August 6, 2002, the date of service of the Adversary complaint on defendant CitiFinancial, to this date, no action has been taken to dismiss the offending state court collection case which defendant CitiFinancial continues to maintain against the Plaintiff. The court finds that defendant CitiFinancial does not take the provisions of 362 seriously. Allowing defendant CitiFinancial any leeway on its failure to mitigate argument would be pernicious, would undermine the automatic stay, and would only encourage future creditor mischief.

The Plaintiff also asks for relief herein _to remedy_ the conduct of defendant CitiFinancial in pursuing a pre-petition debt, maintaining a collection case, post petition and post discharge, and to assure compliance with the Fair Credit Reporting Act. To this end Plaintiff seeks declaratory and injunctive relief. The court finds that the conduct of defendant CitiFinancial required the requests for declaratory and injunctive relief and as such, finds that Plaintiff is entitled to attorney fees as damages related to the violation of the automatic stay by defendant CitiFinancial. Such declaratory and injunctive relief will also serve to partly restore the Plaintiff's fresh start. The conduct to be remedied took place before July 18, 2002 and the vacation of the judgment would have no effect on the remedy pursued here.

Finally, defendant asked counsel for Plaintiff to undertake work on its behalf when it requested that Mr. Bushay sign a stipulation and forward the same to the court in order to obtain relief from a judgment. The normal procedure for obtaining relief from a judgment is found in Minnesota Rules for Civil Procedure, which requires the service and filing of a motion and affidavit, and a hearing. The court finds the reasonable value for such legal services is at least $ 600.00. On the other hand, this adversary proceeding was undertaken in part to compel the vacation of the default judgment, and would have been required to address other matters requiring remedy as is discussed more fully herein (i.e. declaratory and injunctive relief.) Proceeding in a piecemeal fashion in both state court and bankruptcy court was not the option chosen by Plaintiff's counsel. Defendant CitiFinancial, who is responsible for causing the problems complained of herein, is not in a position to complain about the forum chosen by Plaintiff to seek the remedies necessary to restore, as fully as possible, Plaintiff's fresh start.

4

08. The court finds that the default judgment and the pending legal proceedings are likely to cause future complications for the Plaintiff, and otherwise harm the plaintiff's fresh start, all of this flowing from violation of the automatic stay. The substantial part of this damage resulted prior to July 18, 2002.

09. The court finds Plaintiff was damaged by the entry of default judgment in the amount of $3016.00. This amount, if it had been paid by the Plaintiff, would have satisfied the offending judgment.

10. The court finds Plaintiff was further damaged in the amount of $800.00, a reasonable sum to cover costs and attorney fees to process an application to remove a discharged judgment docketed in state court pursuant to Minn. Stat. section 548.181. The court finds that such an application is necessary to restore the status quo as it existed at the time of the filing of the Plaintiff's chapter 7 case, and will otherwise serve the Plaintiff in partly restoring Plaintiff's fresh start. This sum would be incurred regardless of when the default judgment was vacated.

11. The court finds Plaintiff was damaged in the amount of $450.00, a reasonable sum to cover costs and attorney fees required to correspond with credit reporting agencies in order to check credit reports to assure that there are no derogatory entries related to the state court actions of defendant Citifinancial and the underlying debt on such reports. The court finds that checking with credit reporting agencies is a reasonable action a prudent person who has been wrongfully sued would take to assure that an offending court case and wrongful judgment together with the underlying obligation has not had a derogatory affect on credit reports. Such action otherwise serves the Plaintiff in partly restoring Plaintiff's fresh start. This sum would be incurred regardless of when the default judgment was vacated.

12. Plaintiff has suffered $78.00 in out of pocket damages. While this sum may seem small, there is no authority limiting or tying the amount of attorney fees to the size of out of pocket or other damages. The court finds there are other damages other than out of pocket damages.

13. It is well known that one of the claimants/plaintiffs file and maintain collection cases in state court, and in obtaining judgments on the same, is to cause emotional and financial distress that will result in payment of a judgment. The court

finds that defendant CitiFinancial, by the employment of a series of mailed documents resulting in a judgment and a threat to garnish wages was calculated to cause distress and to obtain payment from the Plaintiff. As such, emotional distress suffered under a court case and judgment is obvious, is not fleeting and would continue until relief from such judgment and the dismissal of the court case was obtained.

## CONCLUSIONS OF LAW

01. Defendant CitiFinancial violated 11 USC sections (a)(1), (5) and (6) and is liable to Plaintiff under section 362(h) therefore. Section 362(h) is clear and unambiguous. "An individual injured by any willful violation of a stay provided by this section "... **shall recover actual damages, including attorneys' fees,** ..." This act of Congress is clear and unambiguous. Shall means mandatory. Congress has spoken. This is clearly a fee shifting case where the Plaintiff seeks to vindicate the automatic stay and protect her right to a fresh start. The phrase "including attorneys' fees" serves to define actual damages. As such attorneys' fees in this case are part of actual damages to be recovered.

02. Damages caused by the violation of the automatic stay and flowing therefrom are awarded as follows:
   a. $3016.00 as and for the amount of the judgment
   b. $1250.00 to remove the record of the state court judgment and to investigate credit reporting agencies
   c. $78.00 for out of pocket damages

03. The Plaintiff has suffered emotional distress as a result of the intentional and willful acts of defendant CitiFinancial, for every day the state court action was maintained and continued and, in addition, for every day judgment was on record prior to being vacated. Plaintiff is entitled to $100.00 per day from the date of submission for filing of the state court action on June 12, 2002 by defendant CitiFinancial until dismissed with prejudice which sum continues; and an additional $100.00 per day from the date judgment was entered on June 24, 2002 and until vacated on October 28, 2002 for a total of $10500.00 for 105 days.

04. The Plaintiff is entitled to injunctive and declaratory relief as requested with respect to dischargeability of the CitiFinancial debt and the Fair Credit Reporting Act, and attorneys fees in maintaining this adversary proceeding therefore.

6

## ORDER FOR JUDGMENT

01. Plaintiff's request for declaratory and injunctive relief is hereby granted, the CitiFinancial debt is hereby discharged, and defendant CitiFinancial shall comply with Fair Credit Reporting Act requirements, shall report to all credit reporting agencies hereon and certify that Plaintiff's debt is discharged in bankruptcy and the amount owed thereon is zero.

02. Plaintiff shall have judgment against defendant CitiFinancial in the amount of $14,844.00, plus an additional $100.00 per day from June 12, 2002 until the state court case maintained by defendant CitiFinancial against Plaintiff is certified as being dismissed.

03. For attorney fees incurred in maintaining this adversary proceeding. Prevailing counsel shall submit a formal application for attorney fees and costs and set the same on for hearing within 30 days of the date of this order.

04. This court retains jurisdiction for enforcement of this order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

date:

BY THE COURT


R. J. Kressel
U.S. Bankruptcy Judge